83 So.2d 191

### A. T. POWELL

#### v.

### MOBILE CAB AND BAGGAGE COMPANY, Inc.

1 Div. 582.

Supreme Court of Alabama.

Nov. 3, 1955.

Rushton, Stakely & Johnston and Marion Rushton, Montgomery and Caffey, Gallalee & Caffey and Jack C. Gallalee, Mobile, for appellant.

477

Vincent F. Kilborn, Mobile, for appellee.

GOODWYN, Justice.

This is an "unfair competition" suit brought by appellee against appellant in the circuit court of Mobile County, in Equity, to enjoin appellant from using in his taxicab business the words "Yellow Cab" or "Yellow Cab Company" and the colors yellow and black in any combination likely to confuse his cabs with those of appellee. The appeal here is from the final decree granting the relief prayed for.

Although there are assignments of error questioning the propriety of enjoining appellant in any respect, we gather from appellant's brief that the claimed error insisted on is that the injunction is made operative in territory (the corporate limits and police jurisdictions of the municipalities of Prichard and Chickasaw, in Mobile County) where appellee is not licensed to do business but appellant is so licensed.

478

The argument seems to be that the doctrine of "unclean hands" is applicable, so as to deny to appellee the right to seek injunctive relief with respect to unfair competition in such municipalities. A further argument is that since appellee is not legally authorized to do business in said municipalities, and appellant is so authorized, appellant cannot be said to be engaged in unfair competition therein with appellee. It is insisted that the decree should be modified so as to exclude such territory from the operation of the injunction.

It does not appear that there is any serious conflict in the evidence, which was taken orally before the trial judge. The following facts appear to be established: For many years appellee and its predecessor in interest have conducted a taxicab business in Mobile under the name of "Yellow Cab Company" and have operated "Yellow Cabs" in connection with said business. The principal place of its business has been in the City of Mobile. At the time of filing the bill in this case it was doing a gross annual business of about $400,000 and operating between 35 and 40 taxicabs. In connection with appellee's said business it maintains a number of telephone call boxes throughout the City of Mobile, uses radios in its taxicabs, and has spent considerable money in advertising, throughout the City of Mobile and Mobile County, the name "Yellow Cab" in connection with its taxicab business. It is licensed by the Alabama Public Commission to operate on charter or call within a radius of 50 miles of Mobile. However, the licensing Act, Alabama Motor Carrier Act of 1939, Code 1940, Tit. 48, § 301(1) et seq., Pocket Part, as amended, contains the following provision, § 301(2), subd. A(2), excluding application of the Act to the following:

"* * * (2) Motor vehicles for hire while operating wholly within the limits of a city or incorporated town or within the police jurisdiction thereof; or between two or more incorporated towns or cities whose city limits join or are contiguous or whose police jurisdictions join or are contiguous. * * *"

Appellee's cabs are painted yellow and black with distinctive designs. Each cab has on the top a yellow lighted sign bearing the word "Yellow" on one side and appellee's telephone number on the other.

"Yellow Cab" is a trade or business name developed many years ago by the Yellow Cab Manufacturing Company of Chicago which encouraged and licensed the installation of "Yellow Cab" taxi systems in numerous localities throughout the United States. The Yellow Cab Manufacturing Company went out of business many years ago. Mr. Robin C. Herndon, Sr., predecessor of appellee, operated under this system and continued to use the name "Yellow Cab" after he discontinued purchasing the Manufacturing Company's cabs. In 1947 Mr. Herndon transferred his taxicab operations to the Mobile Cab and Baggage Company, Inc., appellee, which has continued the use of the name until the present time.

For several years appellant has been licensed to do a taxicab business in Prichard and Chickasaw, while appellee has never been so licensed. Appellant is not licensed to do a taxicab business in the City of Mobile.

In 1950 appellant admittedly decided "to capitalize on the national reputation of the word 'Yellow Cab' and the yellow color in his business and in October of that year he adopted the name 'Powell's Yellow Cab' and began to operate under his license five or six yellow and black taxicabs in Prichard and Chickasaw". On the top of his cabs he put a light similar to that used by appellee, except in place of the word "Yellow" in front he put the word "Powell's". Like appellee, he put his company's phone number on the other side.

Appellant picks up passengers in Prichard and Chickasaw and sometimes discharges passengers in Mobile. Appellee discharges passengers in Prichard and Chickasaw and on a telephone call will send a cab to either of those municipalities for the purpose of picking up a customer; but appellee in-

structs its drivers not to pick up passengers on the streets of either. Appellant advertises, as does appellee, in the telephone directory which is common to Mobile, Prichard and Chickasaw. Introduced in evidence was a map of "Greater Mobile" showing the location of Prichard and Chickasaw in relation to Mobile. Prichard adjoins Mobile on the north and Chickasaw adjoins Prichard on the north, the three cities constituting a single heavily populated metropolitan area known as "Greater Mobile". The same telephone exchange, broadcasting stations and utilities serve the entire area with their principal offices being in Mobile.

In addition to the testimony of witnesses, the parties stipulated as follows:

"That the Mobile Cab & Baggage Company, Inc., does business in the City of Mobile, Alabama, in the operation of a number of enterprises, among which is taxi operations for the transportation of passengers and small packages for hire, and that it operates there under the name of Yellow Cab Company; that the principal place of business of the Mobile Cab & Baggage Company is Mobile, Alabama, where its general offices and equipment are located, and Mr. A. T. Powell, the respondent, doing business as Powell Yellow Cab Company, owns and operates a taxi cab business of similar nature, with the City of Prichard as its principal place of business; that Mr. Powell is licensed to do business under the ordinances of the City of Prichard and the City of Chickasaw, in the manner set forth in his answer, and that the Ordinances as there set forth, or the conclusions as to the effect of such ordinances as there set forth, are accurate and correct; that the Mobile Cab & Baggage Company is licensed under the Ordinances of the City of Mobile, and that the Ordinances of the City of Mobile governing such operations are substantially to the effect as set out in the bill of complaint. It is not admitted what the purpose of the Mobile Ordinances imply. That the Mobile Cab & Baggage Company is not licensed to do business in the City of Prichard, or in its police jurisdiction, by the Ordinances of the City of Prichard, and that Mr. Powell is not licensed to do business in the City of Mobile, or its police jurisdiction, by the Ordinances of the City of Mobile, and Mr. Powell is licensed to [do] business in the City of Chickasaw and its police jurisdiction by the Ordinances of the City of Chickasaw, but that the Mobile Cab & Baggage Company is not licensed to do business in Chickasaw and its police jurisdiction by the Ordinances of the City of Chickasaw.

"The history of the complainant's operations in the City of Mobile are admitted."

We have given careful consideration to the argument made by appellant, and the authorities relied on by him, and are unable to agree that the trial court erred in making the injunction operative in Prichard and Chickasaw.

It appears to be clearly established that appellee picks up and discharges passengers in Prichard and Chickasaw. And it is appellant's insistence that such action subjects appellee to certain licenses prescribed by the license codes of said municipalities; that appellee has not obtained the prescribed licenses; that such failure constitutes a violation of each of said codes, punishable as criminal offenses; and that appellee thus comes into court with unclean hands and cannot be heard to complain about any unfair competition by appellant in said municipalities. We do not think the doctrine of "unclean hands" is applicable here. It seems to us that the securing of a license to do business in Prichard or Chickasaw is a matter between appellee and said municipalities, and that only those municipalities can take advantage of appellee's failure to obtain any licenses required by them. It should be emphasized that the proceeding under review is one involving a question of "unfair competition", and whether appellee is obligated to secure municipal licenses in connection with its business has no bearing on that issue.

In discussing applicability of the "unclean hands" doctrine in unfair competition cases, it is stated in Callman's Unfair Competition and Trade-Marks, 2d Ed., § 87.1(b) (3), p. 1751, as follows:

"The allegedly illegal act of the plaintiff must be immediately and necessarily related to the issue in litigation."

Also bearing on the question is the following from § 87.1(b) (5), p. 1765, of the same authority:

"When a court refuses to enjoin a defendant's unfair competition because of the plaintiff's 'unclean hands', it doubles the potential injury to the public. It has rightly been recognized that in a case other than one involving unfair competition, the doctrine of unclean hands is applied by the court for the purpose of punishing the plaintiff. 'He loses a great privilege—his day in court. No one suffers but himself. His sins fall on his own head. But this is not true in the unfair competition case. Here, an application of this doctrine causes the results of the plaintiff's sins to fall, not on him alone, but on the consumer as well. A court of equity should not allow a situation to continue where one party at its bar is making profit by deceiving the public, merely because the other party also is guilty of inequitable conduct.'"

In Ruffin v. Crowell, 253 Ala. 653, 661, 46 So.2d 218, 225, we stated the rule as follows:

"The principle of unclean hands is confined to misconduct in regard to the particular matter as to which he is entitled to relief but for such unclean hands, and does not serve to deprive him of relief in respect to some other matter."

In discussing the "unclean hands" doctrine in Foster v. Winchester, 92 Ala. 497, 501, 9 So. 83, 84, this court said:

" * * * The principle invoked does not and never was intended to apply to all the transactions of the party seeking the aid of a court of equity. The principle has its limitations, and must be confined to misconduct in regard to the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the parties and arising out of the transaction. 1 Pom.Eq.Jur. § 399."

From 19 Am.Jur., Equity, § 475, p. 328, is the following:

"§ 475. The wrong which may be invoked to defeat the suit must have an 'immediate and necessary relation' to the equity which the complainant seeks to enforce against the defendant or it must 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.' If the wrong is shown to be merely collateral to the complainant's cause of action, it does not constitute matter of defense."

The rule is thus stated in 30 C.J.S., Equity, § 98 c., pp. 491–492:

"The misconduct which falls within the clean hands maxim must relate directly to the transaction concerning which complaint is made or the subject matter in litigation. The misconduct which falls within this maxim must have infected the cause of action, so that to entertain it would be violative of conscience. It is not sufficient that the wrongdoing is remotely or indirectly connected with the matter in controversy. * * *"

The wrongs of appellee in not securing licenses, if there be wrongs, were against the municipalities of Prichard and Chickasaw, and ones of which only those municipalities could properly complain. "The revenue laws, it is said, provide ample punishment for the evasion by taxpayers of their just debts." Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 2, Sect. 401d, p. 114.

Our conclusion is that appellee's failure to secure licenses, if liable therefor, was so unconnected with the issue raised in the

suit that that defense can not be invoked so as to deny appellee its day in court. As aptly observed by Judge Learned Hand in United States Light & Heating Co. of Maine v. United States Light & Heating Co. of New York, C.C.S.D.N.Y., 181 F. 182, 187:

"I have yet to learn that a man's failure to pay taxes disqualifies him from suing in a court of equity, and the rule must be the same as to corporations."

We have not been cited to any case, nor have we found any, dealing with the specific question here involved. However, we think the following authorities lend support to the conclusion which we have reached, viz.: Nims Unfair Competition and Trade Marks, 4th Ed., Vol. 2, § 417d, § 418, pp. 1320–1322; Northwest Ready Roofing Co. v. Antes, 117 Neb. 121, 219 N.W. 848, 850; Sterling Products Corporation v. Sterling Products, D.C.S.D.N.Y., 43 F.Supp. 548, 549–550; Western Auto Supply Co. v. Western Auto Supply Co., D.C.N.H., 13 F.Supp. 525, 528; General Film Co. of Missouri v. General Film Co. of Maine, 8 Cir., 237 F. 64, 66.

We see no occasion to discuss whether the case could be decided on the theory of potential competition under the doctrine of reasonably expectable expansion of business, through which the public might be confused, since the evidence shows an already existing actual competition. (By this we do not mean to imply that the business being done by appellee in Prichard and Chickasaw is covered by the ordinances now in effect. We do not pass on that question.) That there is such competition appears to be recognized by appellant in insisting that appellee has violated license ordinances of Prichard and Chickasaw by doing business therein without securing licenses.

The decree appealed from is due to be, and is, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.