Teresa I. KELLER, Petitioner,

v.

The INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T05–8804–TA–00028.

Tax Court of Indiana.

Nov. 21, 1988.

Ferd Samper, Samper Hawkins Atz & Greuling, Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen. by Lynn A. Francis, Deputy Atty. Gen., Indianapolis, for respondent.

## ORDER ON PETITION FOR INJUNCTION PENDING ORGINAL TAX APPEAL

FISHER, Judge.

### STATEMENT OF THE CASE

Petitioner, Teresa Keller, has filed an amended petition for an original tax appeal and a petition to enjoin the collection of tax. The petition challenges the Department's assessments of Keller's income for the years 1982, 1983, and 1984. Keller contends that the Department's assessments are arbitrary and capricious, and in total disregard of her books and records. Keller has supplied all of her books and records to the Department. The court held a hearing on the petition to enjoin the collection of tax.

During the years 1982, 1983, and 1984, Keller ran a business called Barbie's Rubdown. The Department conducted an audit of her business income during the year 1985. The Department's assessments are based largely upon statements made by a former employee of Keller as contained in an Indiana State Police investigation report. The police investigation was not conducted for purposes of the audit. As a result of the police investigation, Keller was arrested and charged with promoting prostitution. The charges were later dismissed. The Department argues that Keller is not entitled to the equitable relief of the court because the income in question was derived from an illegal business, and income tax returns for the years at issue were not timely filed. The Department contends that these two issues render Keller with "unclean hands".

The principles of equity apply to an action for injunction in the Tax Court. One such principle is "he who comes into equity must come with clean hands". *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.* (1945), 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381; *Roberts v. Vonnegut* (1914), 58 Ind.App. 142, 104 N.E. 231. Ordinarily, the wrong which may be invoked to defeat a suit under the "clean hands" doctrine must have an "immediate and necessary relation" to the matter before the court. *Keystone Driller Co. v. General Excavator Co.* (1933), 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293; *Powell v. Mobile Cab and Baggage Co., Inc.* (1955), 263 Ala. 476, 83 So.2d 191. Hence, Keller's unclean hands must derive from the transaction before the court. The Department has failed to show an "immediate and necessary relation" between Keller's presumed illegal business and the assessment of income taxes.

In *Esquire, Inc. v. Maira* (M.D.Pa.1951), 101 F.Supp. 398, Esquire brought a suit to enjoin the use of the name "Esquire" in connection with a men's clothing store operated by defendant. The defendant contended that Esquire was not entitled to injunctive relief to protect its name because Esquire had unclean hands since its magazine contained drawings and pictures which were "salacious, suggestive, bawdy, and invariably showing females in various degree of disattire and containing innuendos referring to sex". *Id.* at 403. The court held that Esquire was entitled to equitable relief because Esquire's "unclean hands" did not derive from the matter before the court. The court noted that "the character or quality of the literature is not involved in this case. The cartoons, pictures, and drawings published in 'Esquire' are only incidental and are not relevant to the issues at hand". *Id.* at 403.

█ As in *Esquire*, Keller's business is only incidental to the issues at hand. The

question before the court is whether or not Petitioner owes a certain amount of income taxes and not the manner in which she earned her income. The clean hands doctrine was also raised in *Republic Molding Corp. v. B.W. Photo Utils.* (9th Cir.1963), 319 F.2d 347. In that case, the court noted:

> What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant. As Professor Chafee suggests, (page 1072), we should not by this doctrine create a rule comparable to that by which a careless motorist would be "able to defend the subsequent personal injury suit by proving that the pedestrian had beaten his wife before leaving his home."

*Id.* at 349.

Although courts of equity should not condone illegal behavior, neither should they be the moral judges of matters not before them. "The maxim in question is said not to affect all 'sinners' or to embrace general iniquitous conduct, and not to comprehend all moral infirmities, the reason being that courts of equity are not primarily engaged in the moral reformation of the individual citizen." 27 AM.JUR.2d Equity § 138 (1974). It has also been held that equitable relief shall be denied if a petitioner's wrongdoing has a harmful effect on a respondent's position before the court. As noted in *Keystone Driller Co. v. General Excavator Co.* (1933), 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293:

> [Courts of equity] apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. They do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.

Equity does not demand that a petitioner lead a blameless life, but it does require that she shall have acted fairly and without fraud or deceit as to the controversy in issue. *Id.* Here such unfair or fraudulent action has not been alleged or proven.

Also to be considered is Keller's failure to file timely income tax returns. When the audit of Keller's income was conducted for the years 1982, 1983, and 1984, she had not yet filed income tax returns for the years in question. Keller provided the Department with tax returns for the years in question after a hearing was held. Keller has been cooperative and has supplied all her books and records to the Department.

The Department relies on *McGee v. U.S.* (N.D.Ind.1974), 380 F.Supp. 801, in which Plaintiff was assessed $45,156.54 for the period of January 1, 1972 through October 6, 1972. On October 6th, the IRS terminated Plaintiff's taxable year pursuant to 26 U.S.C. § 6851. Plaintiff filed an action to enjoin further collection of the assessment and demanded the return of previously seized funds. The Plaintiff had filed no tax returns either for the short period in 1972 or for the full tax year of 1972. The court held that "the taxpayer is not entitled to equitable relief (other than what has been granted) because of Plaintiff's failure to file a tax return for the time period in question. The clean hands doctrine certainly applies in this instance...." *Id.* at 803.

Certainly, failure to file tax returns for years at issue will invoke the clean hands doctrine and deny the taxpayer equitable relief. Equity will not enjoin the collection of taxes where the errors in the assessment were caused by the acts or misstatements of the taxpayer himself. *Bank of Santa Fe v. Buster,* 50 Kan. 356, 31 P. 1094.

However, a distinction can be made between *McGee,* and the case at bar because no tax returns were filed in *McGee* and Petitioner has filed late returns in the case at bar. The issue then becomes whether or not Keller has preserved her right to equitable relief by filing late tax returns.

"The maxim should not be applied where Defendant has not been seriously harmed and the wrong complained of can be corrected." *Rodgers v. Tracy* (1951), Tex.Civ. App., 242 S.W.2d 900. There is support for the proposition that if a petitioner can purge herself of wrongdoing then her right to equitable relief will be restored. *See Dickerson v. Murfield* (1944), 173 Or. 662, 147 P.2d 194. This reasoning has been used most commonly in patent cases:

> Further, the extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration. *G. Heileman Brewing Co. v. Independent Brewing Company* (1911), 191 F. 489. In patent cases a patent owner who has misused his patents in a manner contrary to the public interest is not denied relief in enforcing his patent rights if he can demonstrate that the consequences of misuse have been dissipated or "purged". (citations omitted)

*Republic Molding Corp., supra* at 349–50.

Absolute failure to file tax returns would render a taxpayer with unclean hands in challenging a tax assessment. However, Petitioner has filed her income tax returns for the years at issue, albeit late. The Department auditor testified at the hearing on the injunction that the assessment results would have been the same whether or not they had the returns before them. (Transcript pp. 52, 59). In light of the lack of Indiana authority on point, the court finds the reasoning of *Dickerson* and *Republic Molding Corp.* to be persuasive. Just as injunctive relief should be granted only in extraordinary cases, "the doctrine of unclean hands is reluctantly applied and is scrutinized with a critical eye." *Indiana High School Athletic Ass'n v. Raike* (1975), 164 Ind.App. 169, 329 N.E.2d 66, 84. The court finds that Keller has purged herself of any impediment as regards the "clean hands" issue.

Keller also has the burden of showing that she is entitled to injunctive relief pursuant to I.C. 33–3–5–11 which provides:

> (c) After a hearing on the petition filed under subsection (b), the tax court may enjoin the collection of the tax pending the original tax appeal, if the tax court finds that:
> (1) The issues raised by the original tax appeal are substantial;
> (2) The petitioner has a reasonable opportunity to prevail in the original tax appeal; and
> (3) The equitable considerations favoring the enjoining of the collection of the tax outweigh the State's interest in collecting the tax pending the original tax appeal.

■ The Department argues that Keller does not present any substantial issues in her case. The Department contends that the resolution of this case will not have any statewide impact since this case deals only with the individual tax liability of Keller. In previous decisions of this court the term "substantial issue" has been given a variety of meanings. The court has not restricted the definition of "substantial issue" to mean only those issues which produce a statewide impact. However, the case at bar does present an issue which may have a statewide impact. The Department has made an assessment based on statements of Keller's former employee and has disregarded the amount represented by Keller's tax return. The "best information available" test, as it has been used by the Department, raises questions concerning what is the best information available and to what extent the test should be given validity in a *de novo* proceeding. Resolution of these questions may have an impact on future assessments.

The Department also contends that Keller has failed to establish that she has a reasonable opportunity to prevail in the original tax appeal. The Department asserts that the assessment was made from the best information available. This, however, is questionable since the Department relied on police reports which were not prepared for the purpose of an audit and the depth of the audit did not include a review of bank accounts and bank records. For this reason Keller has a reasonable opportunity to prevail.

Also, the fact that the assessment is largely based on a former employee's state-

ment to the police without further investigation by the Department, creates equitable considerations favoring Keller which outweigh the Department's interest in collection pending the original tax appeal.

Finally, Petitioner has testified as to a lack of assets to pay the assessed taxes. Respondent notes that "mere economic injury does not warrant the granting of a preliminary injunction." *Wells v. Auberry* (1982), Ind.App., 429 N.E.2d 679, 684; *Faris Mailing Inc. v. Indiana Dep't of State Revenue* (1987), Ind. Tax, 512 N.E.2d 480, 482. However, the court recognizes it as a factor to be considered.

Accordingly, the petition to enjoin collection of the tax pending the consideration of the original tax appeal is hereby granted.

IT IS THEREFORE ORDERED that until further order of this court, Respondent, Indiana Department of Revenue, and Madison County Sheriff are hereby enjoined from proceeding to collect tax, penalty, or interest herein alleged to be due. IT IS FURTHER ORDERED that Teresa Keller shall post bond or other security in the amount of the tax, interest, and penalties alleged to be due. The bond or other security must be approved by this court and must be submitted to the court on or before December 19, 1988.